## Staunton.

## GISH v. CITY OF ROANOKE AND OTHERS.

### September 11, 1916.

1.  EASEMENTS—*Way as Boundary—Effect.*—When land is granted, described as bounded on a way, there is an implied covenant that there is such a way, and that so far as the grantor is concerned it shall be continued, and that the grantee, his heirs and assigns shall have the benefit of it.

2.  EASEMENTS—*Private Way—Plat—Dedication—Location.*—Where the deed to the grantee of land establishes his right to use an adjacent road as a private way appurtenant to the land granted, it is immaterial that no plat was made showing such road. No plat is needed for any purpose of dedication as the grantee's rights do not depend upon dedication, but are private rights growing out of the grant; nor is any needed to locate the road, where its location as it was actually used is shown by parol evidence in the case.

3.  EASEMENTS—*Undefined Way—Right of Adjacent Owners.*—The owners of land adjacent to an undefined right of way between them have the right to make a precise and definite location of said way, and the subsequent adoption and use of such way has the effect of establishing the location as effectually as if the way had been located and described in the conveyances creating the way.

4.  DEEDS—*Description of Land—Whole of a Farm—Metes and Bounds.*—If land is described in a deed as the whole of a certain farm acquired by the grantor by a designated conveyance, and is further described by courses and distances, which latter, however, do not embrace the whole farm, the latter description will be rejected, and the title to the whole farm will pass by the deed.

5.  JUDICIAL SALES—*Purchaser—Secret Vices in Proceedings.*—A purchaser at a judicial sale, without notice, under proceedings regular upon the face of the record of a court of competent jurisdiction, will be protected as against mere errors of the court, and secret vices in the proceedings, which can only be made to appear by proof of extrinsic facts not appearing on the face of the record.

Appeal from a decree of the Court of Law and Chancery of the city of Roanoke. Decree for the defendants. Complainant appeals.

*Reversed in Part.*

The opinion states the case.

*C. S. McNulty,* for the appellant.

*S. Hamilton Graves* and *McHugh & Heazel,* for the appellees.

SIMS, J., delivered the opinion of the court.

The land involved in this suit is shown by the following diagram:

Mrs. Nannie E. Gish claims that she owns the land A, B, C, D. The city of Roanoke claims that it owns the land a, b, C, D, and that the land a, A, B, b, has been dedicated to and accepted by the city as a public

street.   Mrs. Brophy, the owner of lot 4 claims that the land a, A, B, b, is a street or right of way appurtenant to her lot.

Prior to 1889, S. H. Gish and Nannie E. Gish were the owners of all this land and also of land to the south, east and north of it.   In March, 1883, there was a map made by Skinker and Simpson, engineers, designated "Map of Lots of the Lewis Addition to the Town of Roanoke, Virginia, which included a part of the land belonging to S. H. Gish and Nannie E. Gish, and showed lots 1, 2, 3, 4, 5, 6 and 7 shown on the diagram above, and other lots not material to be considered in this suit, without any indication of any roadway or street where lot 3 was located.   It showed as Tosh street what is now Highland avenue, and as an extension of Grove street what is shown on the above diagram as an extension of 6th street.   This plat was never recorded in the clerk's office of Roanoke county or city.   The land in controversy was then in Roanoke county and was afterwards included in the corporate limits of such city.   There is no evidence in the record that S. H. Gish or Nannie E. Gish authorized the inclusion of their land which was included in the Lewis Addition plat.

By deed dated January 3, 1889, S. H. Gish and Nannie E. Gish, his wife, conveyed to S. S. Brooke part of their land by the following description:

"Beginning at the S. E. corner of Tosh and *Gish streets;* thence with Tosh street S. 83 degs. 10' E. 200 feet;  thence S. 6 degs. 50' W. 130 feet to a 15 foot alley; thence with said alley N. 83 degs 10' W. to *Gish street* thence with *Gish street* North 5 degs. 50' E. 130 feet to Tosh street, at the place of beginning."

This property consisted of lots 4, 5, 6 and 7, shown on the diagram above, and refers to the boundary line

A, B, as the line on that side of "Gish street." Mrs. Brophy derives title under this deed by subsequent conveyance.

By deed dated January 3, 1889, S. H. Gish and Nannie E. Gish conveyed to J. E. Bushnell the land indicated in outline on the diagram above by the following description:

"Beginning at a point on the south side of Tosh street, 200 feet east of *Gish street;* thence with Tosh street in an easterly direction 100 feet to a point; thence in a southerly direction 130 feet to an alley; thence with said alley in a westerly direction 100 feet to a point; thence in a northerly direction 130 feet to the beginning."

By contract in writing, dated March 31, 1890, S. H. Gish and Nannie E. Gish sold to W. P. Moomaw and others, "all that tract or parcel of land, with its appurtenances lying and being partly in the county and partly in the city of Roanoke, Virginia, and partly on either side of Roanoke river, and known as the Gish farm, and bounded and described as follows:

"Beginning at a white oak in a lane at a point marked 'A' on a plat of said land with the survey thereof, made by John Snyder, S. R. C., recorded in the clerk's office of the County Court of Roanoke county, said point of beginning being also at a corner of the boundary line of the lands known as the Tosh property lately owned and occupied by Mrs. Jane Lewis, deceased, thence with the line of said Tosh or Lewis lands, N. 13 degrees E. 63 poles to a point at a white oak in said lane, marked '2' on said plat, thence N. 40 degrees E. 14 poles to a point at a white oak, marked '3' in said plat, thence N. 9 degrees E. to the south side of an alley between Washington and Tosh streets as shown on the map of said city in com-

mon use in said city; thence with said alley in a westerly direction to the *north side of Gish avenue; thence in a northerly direction, to be hereinafter accurately ascertained, about 145 feet to Tosh street, thence in a westerly direction bearing north, to the west side of Ferdinand avenue,* thence northerly, bearing west, along said Ferdinand avenue, to the corner of a lot known as the Wescot lot, thence with the said Wescot lot line to a point at a black oak about 3 poles from said river marked 'G' in said plat; thence N. 88 degrees W. 12 poles, crossing said river to a point marked 10 in said plat at a stake; thence down the river as it meanders, 148 poles, passing the mouth of Hubbert's spring branch at a distance of 91 poles to two Spanish oaks and a hickory, and on to this point marked 11 in said plat; thence N. 50 degrees E. 20 poles crossing the said river to a point at a stake by the fence marked 12 in said plat; thence N. 43 degrees E. 59 poles to the place of beginning."

In 1883, prior to the date of the said contract, the "Gish farm" was enclosed by its said owners, S. H. and Nannie E. Gish, on the side of the land in controversy by a wire fence located along the south side of the alley, shown on the above diagram, coming from the east in a westerly direction to point "a" shown on such diagram, between "a" and "a'" there was a gate erected in 1885, from "a'" the wire fence passed along the dotted line, shown on such diagram, to "b'," thence in a westerly direction, bearing slightly north, along the line of Tosh street, crossing 6th street, to the point "C," and thence on to Ferdinand avenue, to the west of point "C." The said land was so enclosed at the time of the conveyance to the city of Roanoke in 1901, and such fence remained in this ocation for some time afterwards.

By this fence, therefore, all of the land in controversy, except lot 5 and a portion of the eastern side of lot 2, was enclosed along with the Gish farm south and west of the land in controversy; the land so enclosed by such fence being in 1883, and until said contract in 1889, used as farm land, said owners living thereon in a residence located in a southerly direction from the land in controversy. Prior to the date of said contract, March 31, 1890, the said owners had sold and conveyed away all of their lands except what was included in said wire fence and lot 3 and that portion of lot 2 left outside of such fence, as shown by said diagram.

From 1883 to the time of said contract of March 31, 1890, and afterwards, there was a private road in use by said owners, S. H. and Nannie E. Gish, as a rear outlet to and from their dwelling and farm through the gate "aa'" shown on the above diagram into the alley at rear of lot 3, thence over lot 3, bearing somewhat to the east side of lot 3, possibly to attain an easier grade, there being a slope along the west side of the rear of such lot, on the side of which the wire fence ran from "a'" to ":b'," and passing in the general direction indicated by the letters "cccc," at times and for the most part entering what was afterwards graded as Tosh street, or Highland avenue, across the northeast corner of lot 2, to the east of a red oak tree standing there, which in turn was somewhat east of the wire fence at the point; and at times this road passed differently over lot 3 and sometimes over a portion of lot 4 before it was enclosed.

Therefore, when said deeds to S. S. Brooke and J. E. Bushnell, and said contract of sale to Moomaw and others were made, the private road referred to was in open, visible use by the grantors in said deeds and ven-

dors in said contract of sale—the precise location of the track of the road from the gate to Tosh street being, however, variable. Still, that a roadway was there, in actual use, was unmistakably visible on the ground at the time of such deeds and contract.

After said contract of sale to Moomaw and others, the vendees failing to comply with the terms of their purchase, the said S. H. and Nannie E. Gish instituted suit in the Hustings Court of the city of Roanoke, seeking specific performance of such contract. In the bill in that cause the plaintiffs alleged that they sold to Moomaw and others by said contract, "the part of said ninety-one acre tract of land, which part is described in said agreement, and is understood to contain sixty acres more or less (the balance of said ninety-one acre tract having been previously sold and conveyed to others by the complainants)." A deed to Moomaw and others from the said S. H. and Nannie E. Gish, containing the same description as that set forth in the said contract dated June 5, 1890, was tendered and filed as Exhibit H with the bill in said suit.

In that suit decree was entered November 16, 1893, appointing Hansbrough and Kean commissioners to sell "the land in said contract described." By a subsequent decree, January 13, 1898, H. T. Hall was substituted as commissioner to sell "the tract or parcel of land in the proceedings mentioned and described."

Hall, commissioner, offered the land for sale on the ground, first in parcels and then as a whole, per a plat which Hansbrough and Kean, commissioners, had made dividing such land up into lots and various sized parcels, which lots adjacent to the land in controversy were staked off on the ground so that any purchaser could see exactly what was being sold. These facts appear from the oral testimony of said Hall and others.

The outside boundary line of the land Hall, commissioner, sold, as per this plat and as staked off on the ground, extended along the south side of said alley "A, a," thence to "C," thence westwardly—that is to say, the boundary line of the land in fact sold by Hall, commissioner, did not include the land in controversy. These facts also appear from such oral testimony.

Hall, commissioner, made report to the court of his action as follows:

"The undersigned special commissioner, appointed by a decree entered in the above styled cause on the 13th day of January, 1898, to execute the decree of sale entered in said cause on the 16th day of November, 1893, by making sale of a certain tract or parcel of land in the city of Roanoke, Virginia, which is particularly described in the proceedings in said cause, begs leave to report that he advertised the time, place and terms of sale in the Roanoke Evening World, a newspaper published in the city of Roanoke, for a period of four successive weeks preceding the 12th day of November, 1898, and that on the said 12th day of November, 1898, your commissioner offered said tract or parcel of land for sale at public auction on the premises. The said property was first sold in lots and parcels, and then sold as a whole. The bid received for the property as a whole being greater than the aggregate of bids received on lots and parcels; and the said property as a whole was knocked down to Nannie E. Gish for the sum of $8,075.00, that being the highest bid received for the same."

It will be noted that this report does not refer to said plat used by Commissioner Hall in making the sale he made, nor does he report to the court that he made sale according to a plat or by certain metes and bounds staked off on the ground. In his report he

refers to his appointment to execute the decree of sale "of a certain tract or parcel of land in the city of Roanoke, Virginia, which is particularly described in the proceedings in said cause," and reports that he "offered said tract or parcel of land for sale," etc., and sold it as a whole, etc.

The decree entered on this report December 10, 1898, confirmed the "report of sale and the sale therein reported" and directed Commissioner Hall to "convey to the said Nannie E. Gish . . . the sixty-acre tract of land in the proceedings mentioned." Thereupon the said Hall, commissioner, by deed dated December 19, 1898, made conveyance under such decree to Mrs. Nannie E. Gish, with description of said land as follows: " . . the said tract or parcel of land with its appurtenances situated in the city of Roanoke, Virginia, and bounded and described as follows, to-wit:

"Beginning at a large white oak tree on the south side of the lane near the Gish residence corner to the Lewis land; thence along the lane N. 76 deg. 11′ E. 1042 feet to a point; thence N. 43 deg. 34′ E. 247.3 feet to a white oak tree; thence N. 11 deg. 14′ E. 691 feet to *the south side of an alley; thence with the same E. 83 deg. 28′ W. 1016 feet to the west side of 6th street; thence with the same N. 6 deg. 30′ E. 140 feet to Highland avenue; thence with the south side of the same N. 83 deg. 28′ W. 308 feet to west side of Ferdinand avenue;* thence with the same N. 6 deg. 30′ E. 168 feet to Welch tract; thence with same S. 86 deg. 15′ W. 370 feet to a black oak tree; thence N. 83 deg. 30′ W. 200 feet crossing Roanoke river to south bank thereof at ordinary high water; thence with the same as it meanders 2630 feet to a point on the south bank of the river formerly marked by two (2) Spanish oaks and a hick-

ory; thence N. 30 deg. 00' E. 332 feet crossing the river
to a point; thence N. 44 deg. *f'* E. 972.6 feet to the
point of beginning, it being the same land sold by S. E.
Gish and Nannie E. Gish to W. P. Moomaw and others
by a contract entered into on the 31st day of March,
1890. . . . "

This description *by metes and bounds* followed the
said plat which Hansbrough and Kean, commissioners,.
had made and by which Hall, commissioner, in fact
sold, and did not include the land in controversy.
The added description, "being the same land sold by
S. H. Gish and Nannie E. Gish to W. P. Moomaw and
others by a contract entered into on the 31st day of
March, 1890," did include the land in controvesry, if
the description in such contract included it—as to
which we will presently speak more definitely.

By deed dated December 5, 1901, Mrs. Nannie E.
Gish conveyed to the city of Roanoke, "all that certain
tract or parcel of land with its appurtenances situated
in the city of Roanoke, Virginia, and described as
follows, to-wit:

"Beginning at a white oak tree on the south side of
a lane near the Gish residence, corner to the Lewis
land; thence along the lane north 76 deg. 11' east
1042 feet to a point; thence north 43 deg. 34' east
247.3 feet to a white oak tree; thence north 11 deg.
14' east 691 feet *to the south side of an alley; thence
with the same north 83 deg. 28' west 1016 feet to the west
side of 6th street; thence with the same north 6 deg. 30'
east 140 feet to Highland avenue; thence with the south
side of the same north 83 deg. 28' west 308 feet to the west
side of Ferdinand avenue;* thence with the same north
6 deg. 30' east 168 feet to the Welch tract; thence with
the same south 83 deg. 30' west 200 feet crossing
Roanoke river to the south bank thereof at ordinary

high water; thence with the same as it meanders 2630 feet to a point on the south bank of the river, formerly marked by two Spanish oaks and a hickory; thence north 30 deg. 50' east 332 feet crossing the river to a point; thence north 44 deg. 4' east 972.6 feet to the point of beginning, being the same property conveyed to the party of the first part by H. T. Hall, special commissioner, by deed dated December 19, 1898, and recorded in the clerk's office of the Hustings Court for the city of Roanoke, December 21, 1898, in D. B. 115, page 64.

"There being some doubt as to whether or not the line in the foregoing description on the south side of the river correctly describes the boundary of the said tract of land along said river, it is intended by the party of the first part to grant and convey to the party of the second part the entire tract known as the Gish farm, and the said party of the first part hereby grants and' conveys to the party of the second part the whole of said tract of land, as the correct boundaries may hereafter be ascertained."

The suit at bar instituted in 1911 by *Mrs. Nannie E. Gish* v. *William N. Mason and others,* for partition; to it the city of Roanoke and Mrs. Brophy were not originally parties, but became such by later proceedings therein. The decree complained of was entered July 2, 1915.

There are two grounds of error assigned, which we will consider in their order:

First Assignment of Error.—"The Court of Law and Chancery for the city of Roanoke, Virginia, erred in holding that Nannie E. Gish and Samuel H. Gish, her husband, by deed dated January 30, 1889, and recorded in the clerk's office of the Circuit Court of Roanoke county, Virginia, in Deed Book 'S,' page 520,

dedicated and fixed lot 3, section number 1, Lewis Addition, as a street as between the said Nannie E. Gish and Samuel H. Gish, grantors, and their subsequent alienees."

Second Assignment of Error.—"The learned judge of the Court of Law and Chancery erred in holding that the description of the property contracted for in the contract entered into between S. H. Gish and Nannie E. Gish and W. P. Moomaw, W. J. Blair, *et als*, bearing date on the 31st day of March, 1890, whereby the said S. H. Gish and Nannie E. Gish, his wife, contracted to convey to the said W. P. Moomaw and others, a tract of land known as the 'Gish farm,' covered the lots in controversy in this suit."

Out of these assignments of error arise three questions for the decision of this court:

(1) What was the effect of the deed to Brooke made under the circumstances disclosed by the record, upon the *way* called therein "Gish street," and what are the rights of Mrs. Brophy to such way?

(2) What land was covered by the contract with Moomaw and others above referred to?

(3) What land was conveyed to Mrs. Gish by the deed from Hall, commissioner, and what land was conveyed to the city of Roanoke by the deed from Mrs. Gish to it?

We will consider these questions in the order stated.

(1) What was the effect of the deed to Brooke, made under the circumstances disclosed by the record, upon the *way* called therein "Gish street," and what are the rights of Mrs. Brophy to such way?

As we have seen, at the time this deed was made, there was an alley at the rear of lot 4 conveyed by the deed to Brooke, referred to in such deed, and there was in fact a private roadway in use by the grantors

at the time, and since 1883, passing from such alley, near the southeast corner of lot 4 out to Tosh street, the mainly used track of the road being some little distance from the northwest corner of lot 4.

Under the circumstances, we think it clear that the grantors in the deed to Brooke referred to the said roadway and designated it in such deed as "Gish street." By the Bushnell deed they gave the same designation to this same roadway. By the Brooke deed the right of way for the roadway was definitely fixed on one side by making the western side line of lot 4 the line of it on that side. The Brooke deed did more— and unquestionably as it referred to a road then open and in existence and in visible use, it passed the private right to use it to Brooke as the owner of lot 4 and subsequent owners or occupants of lot 4 as appurtenant to such lot, as the effect of the application of the doctrine of estoppel.

Jones on Easements, p. 23: "It is a settled rule," says Justice Shaw, "that when land is granted, described as bounding on a way it is an implied covenant that there is such a way; that so far as the grantor is concerned, it shall be continued, and that the grantee and his heirs and assigns shall have the benefit of it."

In Minor on Real Property, Vol. 1, p. 132 (sec. 109): "Easements are sometimes created by estoppel. For example, if the vendor of land actually or constructively makes representations as to the existence of an easement appurtenant to the land sold to be enjoyed in land which the vendor has not sold. Thus, where the vendor described the land sold as bound on a street described as running through the vendor's unsold land, the vendor is, as against his vendee, (though not necessarily as against the public or third persons) estopped to deny the existence of such a street. The

conveyance practically creating a private right of way over the vendor's land along the route described in favor of the grantee."

In *White* v. *Tidewater Oil Co.*, 50 N. J. Eq. 5, 25 Atl. Rep. 200, the New Jersey court thus states the law: "Indeed, wherever a dedication of a public highway is effected—as usually is—by means of conveyances to private persons by reference to a proposed street over other lands of the grantor, the private rights of the several grantees precede the public right and are the source from which the public's rights spring. By such conveyances the grantees are regarded as purchasers by implied covenants of the right to the use of the street as the means of passage to and from their premises as appurtenant to the premises, and this right of way in the grantee is wholly distinct from and independent of the right of passage to be acquired by the public; and it is upon the theory that the owner of the fee, by grants of rights of way in the street to his grantee, has parted with all beneficial ownership in the street, that the public authorities may take it for a public highway without any compensation to him."

*Caw* v. *Hughes*, 111 Mass. 296. The description reads: "Beginning at the N. E. corner thereof, and on the southerly side of a proprietor's way, thence running westerly by said way and crossing a ditch two hundred and thirty-four feet to a stake by the side of said way." By this deed a right of way over the "proprietor's way" passed as appurtenant to the land conveyed to Manning. Citing *Tufts* v. *Charleston*, 2 Gray (Mass.) 271.

In note to 14 L. R. A. (N. S.), beginning on p. 878, will be found an extensive collection of the authorities on this subject, from which it would seem that the

overwhelming weight of authority is in favor of the view above expressed as to the effect of the Brooke deed.

All of the cases of *Bushman* v. *Gibson*, 15 Neb. 676, 20 N. W. 106, 289; *Bell* v. *Todd*, 51 Mich. 21, 16 N. W. 304; *Milliken* v. *Denny*, 135 N. C. 19, 47 S. E. 132; *Farnworth* v. *Taylor*, 9 Gray (Mass.) 162; *Lindsay* v. *Jones*, 21 N. W. 72, 25 Pac. 297; *Lamkin* v. *Terwilliger*, 22 Or. 97, 29 Pac. 268; *King* v. *New York*, 102 N. Y. 172, 6 N. E. 395, and *State* v. *Clements*, 32 Me. 279, cited and relied on by counsel for Mrs. Gish, are also considered in said note to 14 L. R. A. (N. S.) *supra;* and in all of these cases, except that of *State* v. *Clements*, no road was open and in use at the time of the execution of the deed in question, and in the last named case, the right of the *State* to the road as a public road was involved, and it was held that the deed did not operate to give that right, as the road referred to in the deed was a private road, built for the owner's own private use only.

In the case of *Vaughan* v. *Lewis*, 89 Va. 187, 15 S. E. 525, cited and relied on by counsel for Mrs. Gish, the extension of Lewis street was never opened—was never an existing street—and the language of the deed, "on northeast corner of John and Lewis streets," were held to be mere words of description which could not possibly have misled appellant or her agent.

It is true that the evidence in this case does not show any dedication to the public by said Gishes of the roadway above referred to, and the position of counsel for latter is correct as to this; but that in no way affects the operation of said Brooke deed, by way of estoppel, to grant the right of use of such road as a private way, as appurtenant to lot 4.

Such road, therefore, being a private road and the right of use of it and to have it kept open, vested in

Mrs. Brophy as the owner of lot 4, being a private right appurtenant to such lot growing out of the operation of said Brooke deed by way of estoppel, it is immaterial that there is no evidence in the record of any plat having been made on which a street named "Gish street" or "Gish avenue" was shown—a fact pressed upon the attention of the court in argument. Such a plat is not needed to locate such road, its location as it was actually used being shown by the parol evidence in the cause; the precise location of the right of way, on its eastern or southeastern side being fixed by the Brooke deed; and the precise location of the right of way, on its western or northwestern side being fixed by the Moomaw contract of sale presently to be more particularly referred to, when read in the light of the circumstances of the existence and use being made of such road at the time of such contract, and when read in the light of the subsequent fixing of the location of the western or northwestern side of such road by the parties entitled to such private right of way. And such a plat is not needed for any purpose of dedication of such road, so far as Mrs. Brophy is concerned, since her rights do not depend upon dedication, but are private rights and arise by operation of the doctrine of estoppel, as aforesaid.

Hence, too, the authorities cited by counsel for Mrs. Gish, on the subject of dedication, have no controlling effect in the cause before the court and need not be referred to in detail.

Bearing in mind the fact that "Gish street," referred to in the Brooke deed, was evidently the private road then actually in use by the grantors in such deed, and that such deed fixed the precise location of the eastern or southeastern side of such road, from the alley to Tosh street—now Highland avenue—and bearing in

mind that such road, at the time the Moomaw contract was executed, passed through the gate, shown on the diagram above, into said alley, and thence over lot 3 to Tosh street, such road where it entered such alley, commencing with the south side of such alley at the point "a" shown on such diagram; we have no difficulty in construing the description in such contract of the metes and bounds so far as they refer to such road—such road being called "Gish avenue" therein— and we see that the course passing from the east along the south side of said alley, described in such contract as "thence with said alley in a westerly direction to the *north side of Gish avenue*," ends at "a," the northwest side of said private road, viewing such road as extending from such alley, from point "a" shown on said diagram, to Tosh street. The bearing of the side lines of lot 3 and adjacent lots not being due north and south, but 6 degrees 50 minutes east of north and west of south, the western side of lot 3 was also its northern side and might by possibility be designated as its *north* side as well as its *west* side, it being indeed, accurately speaking, its *northwest* side, of which *"west"* may have been omitted in the draft of the Brooke deed. By well settled rules of interpretation more serious errors in calls for courses may be corrected in the interpretation of deeds.

Thus evidently point "a" was fixed as the northwest side of the right of way for such private road, left out of the land sold per the Moomaw contract. The precise location of the remainder of the northwest side of the right of way for such road, left out of and not included in the land sold per such contract, was fixed by such contract as follows: From said point "a," "thence in a northerly direction to be *hereinafter*" (evidently intended for *hereafter*) "accurately ascertained

about 145 feet to Tosh street." The precise distance from "a" to "b," shown on said diagram, was 145 feet. Under well settled rules on the subject, referred to in the opinion of this court in *Eureka Land Co.* v. *Watts, ante,* p. 506, the line of the northwest side of the right of way for such. private road, to the extent of its precise location from the point "a" to the point of intersection with Tosh street was left undefined by said contract. This contract was for the sale to Moomaw and others of the land covered thereby "with its apputenances." This covered the right of the Gishes to use said private road along with the owners and occupants of lot 4. Therefore, the owners and occupants of lot 4 and the subsequent owners and occupants of the land covered by the Moomaw contract had the right to make a precise and definite location of the said northwestern side line of said road. 14 Cyc. 1204.

The subsequent adoption and use of an undefined right of way granted or reserved has the effect of establishing the location as effectually as if the way had been located and described in the conveyance creating the way. 14 Cyc. 1205; 23 Am. & Eng. Ency. of L., 31-32; Note to *Dudgeon* v. *Bronson,* 95 Am. St. Rep. 322; Washburn on Easements and Servitude, p. 239.

It appears from the record that the city of Roanoke, claiming to own all of the land covered by the Moomaw contract "with its appurtenances," (and without question the owner of a large part of the Gish farm to which the private right of use of such road was appurtenant), has located the northwestern. line of such road as corresponding with such side line of lot 2. Mrs. Brophy, by counsel, in brief of latter, claims lot 3 as the location of said road. Counsel for Mrs. Gish does not in the petition or in his brief make any complaint on account of such location of such line of the right of way for such

road, her objection not being to such location but to any roadway being held to have been granted or reserved over lot 3. We conclude, therefore, that the effect of the Moomaw contract was to fix and make certain the precise location of the right of way for said private road, on its western or northwestern side, as being along the line "a, b," shown on the above diagram. That is to say, with respect to the location of said private road, the Brooke deed and Moomaw contract, the former by its express terms, and the latter in part by its express terms and in part because of the location fixed by parties claiming under it, have fixed such location as being identical with said lot 3.

We are, therefore, of opinion that independent of the other questions involved in this suit Mrs. Brophy has the right to keep open and to use as a private roadway the space of land covered by said lot 3.

We come now to the consideration of the question—

(2)  What land was covered by the contract with Moomaw and others above referred to?

In view of the facts above stated as to the location of said private road, called in said contract "Gish avenue," and of the wire fence enclosing the "Gish farm" and what lands were in fact occupied and used by the Gishes as the "Gish farm" at the time of such contract and what lands the Gishes then owned, it seems clear that the boundary lines designated in such contract, on the side of the land in controversy in this suit, passed along the south side of said alley, coming from the east, to the point "a," shown on the above diagram, thence—as such line has been fixed subsequently as above stated—along the line between lots 2 and 3 to the point "b" shown on such diagram, thence along the line of Tosh street and crossing the extension of Sixth street, a straight line, to "C," and

thence westward, including the space "a, b, C, D," in the land covered by such contract; and, as appurtenant to all the land covered by such contract, the same right to use said private roadway over lot 3 as the Gishes owned at the time of such contract.

What is said by counsel for Mrs. Gish on the point that where the meaning of an instrument is doubtful, evidence of the acts of the parties may be admitted to show the intent, is correct and the authorities cited thereon contain a well settled rule in Virginia on that subject; but in the case before the court Moomaw and others never *acted* under the said contract—never took actual possession of the land under it—so that the construction of Mr. Blair, one of the purchasers under that contract, that it did not cover "the block of lots in the Gish land, south of Tenth or Highland avenue, shown on the Lewis map, cannot be considered as of any probative value under the rule invoked.

The same is true of the testimony of C. A. Moomaw that, "My recollection is that we purchased only farm acreage from Mrs. Gish." Besides, the latter testimony is not inconsistent with the position that said Moomaw contract covered all the land within the wire fence then considered the "Gish farm" and "farm acreage," according to other parol evidence in the case; lots 1 and 2 and the extension of Sixth street and of the alley above referred to on the Lewis map being merely on paper, such lots and extension of street and alley not having been in fact graded or staked off on the ground when said contract was executed, nor when the subsequent deeds down to the deed to the city of Roanoke, above referred to in statement of facts, were executed. With the exception of the private road above referred to, which was not enclosed by said wire fence, practically all the residue of the land in con-

troversy was under inclosure and treated and used as a part of the "Gish farm" at the time of the Moomaw contract.

Such being our opinion as to what land was covered by the Moomaw contract, we come now to consider the remaining question—

(3) What land was conveyed to Mrs. Gish by the deed from Hall, commissioner, and what land was conveyed to the city of Roanoke by the deed from Mrs. Gish to it?

If what appears from the parol testimony with respect to what land was in fact sold by Hall, commissioner, to Mrs. Gish were not considered, and the Moomaw contract construed in the light of the surrounding circumstances and situation of the land and appurtenances, which were its subject matter at the time of such contract; the proceedings in the above named chancery suit for the enforcement of that contract; the deed of Hall, commissioner, to Mrs. Gish; and the deed from Mrs. Gish to the city of Roanoke, were alone looked to and considered, under the well established rules of construction of deeds it would have to be held that the deed from Hall, commissioner, to Mrs. Gish, by its terms, conveyed not only the land within the specific bounds set out in the deed but also all additional land which was in fact covered by the Moomaw contract, and which was decreed to be sold in said chancery suit. The same is true of the deed from Mrs. Gish to the city of Roanoke, and even more clearly so, in view of the language in that deed defining the subject conveyed.

In Devlin on Deeds, vol. 2, sec. 1018, the law is stated to be: "If the land is described as the whole of a certain farm, and is again described in the deed by courses and distances, which, however, do not embrace the

whole farm, this latter description will be rejected, and the title to the whole farm will pass by the deed."

It is very true that Commissioner Hall was acting under a mistake in thinking that the boundaries of the plat which Commissioners Hansbrough and Kean had made covered all of the land covered by the Moomaw contract and which was decreed to be sold in the suit in which he was acting as commissioner. It is also true that he did not in fact sell all of the land covered by said contract and decreed in such suit to be sold, and that Mrs. Gish did not in fact buy all of such land. But Commissioner Hall reported to the court in such suit that he had sold all of the land therein decreed to be sold; the decree upon his report confirmed such sale and directed him to convey accordingly; and he did convey accordingly. It is true that such report was made and decree was entered under the same mistake of fact, and the clause in the deed, "it being the same land sold by Samuel H. Gish and Nannie E. Gish to W. P. Moomaw et als by contract entered into on the thirty-first day of March, 1890," was included in such deed by mistake; but unless and until such mistake was corrected and the deed was reformed to make it accord with the actual purchase and sale, the deed conveyed to Mrs. Gish more land than she in fact purchased. If the rights of no third party, such as a *bona fide* purchaser for value, had intervened, the oral testimony in this cause would be sufficiently clear and convincing to warrant the reformation of such deed as against Mrs. Gish. But the rights of a *bona fide* purchaser for value, to-wit, the city of Roanoke, have intervened, and, in the absence of such reformation and in the absence of any knowledge on the part of the city of Roanoke of the facts *in pais* disclosed by the oral testimony in this case with respect

to what land Hall, commissioner, in fact sold to and was purchased by Mrs. Gish—facts not disclosed by the record of said suit under decrees in which Commissioner Hall acted, and not disclosed by the deed from Hall, commissioner, to Mrs. Gish, nor by the deed of Mrs. Gish to the city of Roanoke—we are of opinion that the city of Roanoke had and has the right to rely upon the title conveyed to it by its deed from Mrs. Gish, unaffected by such matters *in pais.*

The principle fixing the rights of a *bona fide* purchaser for value without notice applies. This principle is too well settled and too well known to need reference to the authorities. Its application to defects in a title acquired through court proceedings, the record in the suit, was made in the case of *Marrow* v. *Brinkley,* 85 Va. 55, 60, 6 S. E. 605, 608, where the court said: "The decisions of the courts, as a system of equity, founded upon an enlightened public policy to give sanction to judicial sales, and security and repose to judicial titles, establish the rule that a purchaser at a judicial sale, without notice, under proceedings regular upon the face of the record of a court of competent jurisdiction, will be protected as against the mere errors of the court and secret vices in the proceedings, which can only be made to appear by the proof of extrinsic facts not appearing on the face of the record."

We think that the city of Roanoke falls within the application of this principle and that it took by its deed from Mrs. Gish title to the land in controversy, except lot 3, and as to that it took the right of its use as a roadway appurtenant to the land conveyed by such deed, such use, however, to be in common with the right of its use as a roadway to which Mrs. Brophy is entitled, as above held, and without the right to close

such roadway as against Mrs. Brophy or subsequent owners and occupants of lot 4.

We are, therefore, of opinion to alter somewhat the form and in substance to affirm so much of the decree complained of as held, in effect, that lot 3 could not be closed as a roadway; that is to say, we are of opinion that Samuel H. Gish and Mrs. Nannie E. Gish, their heirs and assigns, are estopped from closing lot 3 in section 1, as shown on the map of Lewis Addition to the city of Roanoke, Virginia, as against Mrs. Nellie L. Brophy and her heirs and assigns, owner or owners, or occupant or occupants of lot 4, as shown on such map, and the right of such owner or owerns, occupant or occupants of said lot 4 to use such lot 3 as a roadway; and we are of opinion to reverse so much of the decree complained of as held that the residue of the land in controversy in this suit, to-wit, lots 1 and 2 and the extension of Sixth street and the extension of the alley south of lots 1 and 2 shown on said map, were not included in the conveyance from Nannie E. Gish to the city of Roanoke and held that the title thereto is outstanding subject to sale in the suit for specific performance mentioned in such decree; and we will enter such decree as the court below should have entered.

*Reversed in part.*