SARGEANT (HART, B. & M. MANUF'G CO. v.). See Case No. 6,156.

## Case No. 12,360.

SARGEANT v. STATE BANK OF INDIANA.

[4 McLean, 339.][1]

Circuit Court, D. Indiana, May Term, 1848.[2]

DEDICATION—BOND TO CONVEY — PROCEEDINGS — STATUTE—LAPSE OF TIME.

1. By certain statutes, provision is made for establishing seats of justice in Indiana. Commissioners were appointed, and other officers, who were to receive donations of land, or purchase the same, etc.

2. In establishing the seat of justice for Tippecanoe county, certain proceedings were had, under the law, and a bond was taken from Samuel Sargeant, "to the board of justices of Tippecanoe county," to convey to them, when they should be organized, certain lots for public purposes.

3. The seat of justice being established at Lafayette, in a summary mode provided, suit was brought against the heirs of Sargeant, for a title to the property which their ancestor agreed to convey. A decree of conveyance was entered, and the conveyance, in pursuance thereof, was executed.

4. The property thus conveyed has become very valuable, and the heirs have brought an ejectment to recover it, on the ground that the proceedings were illegal and void by which a decree of title was obtained.

5. The bond, though it bound the obligor to convey to a board not in esse, is not void or inoperative.

6. It is fairly within the statute.

7. The court held, that notice was given to the heirs, and this is conclusive in the case. The fact of notice can not collaterally be denied.

8. But the dedication is good at common law, if the statute had not been technically complied with.

9. The property thus donated, by improvements has become immensely valuable.

10. And after the lapse of many years enjoyed by the public, the title must be held good.

[This was an action of ejectment brought by Phineas O. Nabby, Jabez and Benjamin B. Sargeant, heirs of Samuel Sargeant, against the State Bank of Indiana.]

Smith & Lockwood, for plaintiffs.
White & Baird, for defendant.

OPINION OF THE COURT. The plaintiffs, heirs of Samuel Sargeant, who claimed under the patentee by deed, claim the lots in controversy, and also other grounds with-

---

[1] [Reprinted from 7 Reporter, 231, by permission.]

[1] [Reported by Hon. John McLean, Circuit Justice.]
[2] [Affirmed in 12 How. (53 U. S.) 371.]

in the town plat of Lafayette. The lot and the improvements thereon are proved to be worth from twelve to fifteen thousand dollars. The patent and deed are in evidence, and also proof of the heirship of the lessors of the plaintiff. To understand the defense, it is necessary to refer to the statutes under which it is made.

By the act of the 20th of January, 1826, the county of Tippecanoe was established, and certain commissioners were named to fix the seat of justice. They were to meet the first Monday of May ensuing. The qualified voters, at the time of electing a clerk, recorder, etc., were authorized and required to elect five justices of the peace, who were to constitute a county board, etc. The act of the 14th of January, 1824, provided for the appointment of five commissioners to fix on the seat of justice for a new county. "And it shall be the duty of the commissioners to receive donations in lands from any person or persons owning lands in such county, and offering donations for the use of the same," etc. "The said commissioners shall inquire and ascertain whether any land on which they may be inclined to fix the seat of justice, can be obtained by donation, or by purchase at a reasonable rate," etc.; "and the commissioners shall take a bond, or bonds, of any person or persons proposing to give or sell any such land payable to the board of county commissioners, and their successors in office, conditioned for the conveyance of such tract or tracts of land so given or sold, to such person as the county commissioners shall appoint as agent to receive the same, which bond or bonds the commissioners shall deliver to the county commissioners, together with a plain and correct report of their proceedings, containing a particular description of the land so selected, which shall be considered the permanent seat of justice for such county." By the 2d section, the agent is required to give bond, "and the county commissioners and said agents, are hereby vested with all further powers necessary to carry this law into full and complete operation, according to the true intent and meaning thereof." Section 4 provides, that the county commissioners, after receiving the report, are required "to appoint some suitable person, a resident of such county, as agent, whose duty it shall be," after giving security, "to receive good and sufficient deeds of conveyance, for any land which may have been given for the use of the county as above provided, and to lay off the same into town lots, etc., as the county commissioners may direct; he shall proceed also, from time to time, to sell the said lots, or so many of them as the said commissioners may deem proper, on such terms as the county commissioners may consider most advantageous to the county; and to collect all moneys for the sale of said lots, and pay the same into the county treasury; he shall also make conveyances to the purchasers of such lots, and after the payment of certain expenses out of such moneys, the balance shall be applied for the construction of public buildings, etc."

By the act of the 3d Jan'y, 1824, a county board of justices are established, with corporate powers. The justices, by the 4th sec., are required to meet on the first Mondays of January, March, May, July, September and November, in each year; appoint a president, etc., and if the circuit court shall sit on any of said days, the county board of justices shall meet on the Monday succeeding such term. The 5th section, required the clerk of the circuit court to attend the meetings of the county board of justices, and keep a record of their proceedings. All powers possessed by the commissioners of the county, are vested in the justices of the county board. On the 4th of May, 1826, Samuel Sargeant, with others, entered into a bond in the sum of ten thousand dollars, conditioned "that they shall well and truly convey, or cause to be conveyed, unto the board of justices of Tippecanoe county that may hereafter be organized, and their successors in office, by way of general warranty deed, certain lots of ground designated." This bond was filed in the clerk's office, 7th November, 1827, and recorded. On the same 4th of May, 1826, the commissioners appointed made their report, establishing the seat of justice at Lafayette, and they state that "they have received as donations from the proprietors and others, for the benefit of said county, the following described property, viz: All the even numbered lots in said town, amounting to seventy, and other grounds for which a title bond is herewith transmitted, together with a plan of said town as recorded in the recorder's office at Crawfordsville, reserving, for the use of a county library, ten per cent." On the 5th day of July, 1826, the Tippecanoe county court of justices met, as appears from their record, being duly commissioned and organized. They received the return from the commissioners appointed to locate the seat of justice, etc., received a bond from Samuel Sargeant for ten acres of land, east and adjoining the town, etc., and also other donations, etc. The record of the circuit court of Tippecanoe county of May term, 1828, was given in evidence. From this record it appears that at November term, 1827, Peter Hughs, agent for the county of Tippecanoe, by Curry, his attorney, appeared and moved the court to appoint a commissioner to convey real estate in conformity to a title bond, given by Samuel Sargeant, dec'd, and others therein named, to the board of justices, and which bond he now here files for the conveyance of certain town lots, and also a bond by himself for the conveyance of ten acres, etc.; "and it appearing to the satisfaction of the court that proper and legal notices have been given of this motion, R. Johnson was appointed commissioner to make the conveyance, and the deed was executed by the commissioner under the decree of the 7th of June, 1827."

It is objected that the bond given by Sargeant and others is a nullity: (1) For want of parties. (2) For want of delivery. To make a good deed parties capable of contracting are indispensable. At the date of this bond, it appears from its face that the obligees were not in esse. The obligors bound themselves "well and truly to convey, or cause to be conveyed, unto the board of justices of Tippecanoe county, that may hereafter be organized and their successors in office." This bond, it is contended, is void at common law. as there was no obligee at the time It was executed and delivered. Shep. Touch. 235, 367, 368; 1 Cruise, Dig. 415; 8 Johns. 310; 9 Johns. 73; 2 Bl. Comm. 276, 304. And that it is also void as a statutory bond, because it was not taken under the provisions of the statute. The statute requires the bond to be taken "to the board of county commissioners of such county and their successors in office," and the bond was taken "unto the board of justices of Tippecanoe county that may hereafter be organized, and their successors in office." 4 Ohio, 169.

A bond, it is insisted, not good at common law, is also void under the statute, as the statute does not attempt to create obligees not in esse, and a doubt is suggested whether the legislature had power to make such a provision. There can be no doubt that they have such power, but it seems no special provision to that effect was made in this case. The bond being void when delivered to the commissioners, could not be made good by any subsequent delivery as it was not, in the first instance, delivered as an escrow. At the time the bond was handed to the commissioners, from the conditions expressed upon its face and the nature of the transaction, it was not to bind the obligors unless the seat of justice should be established at the place designated; that was the consideration on which the instrument was executed. Under the law the commissioners were required to "inquire and ascertain whether any land where they may be inclined to fix the seat of justice by donation or purchase," etc. This was preparatory to their establishing the seat of justice. After the execution of the bond the commissioners were not absolutely bound to fix the seat of justice at the place designated in the bond. The bond was then given on the condition that the seat of justice should be established as contemplated by the obligors. The condition of the bond was, that "the obligors would convey such tract or tracts of land so given or sold, to such person as the county commissioners shall appoint as agent to receive the same." Suppose that this land had been purchased of Sargeant and others, and the money paid, could they in a court of chancery contend, with success, that the bond was void? This may be admitted as a question at common law. There being no obligee. no action at law could be brought on the bond, for a

breach of its conditions. That a deed takes effect from its delivery is admitted; and also if it be delivered as an escrow, it does not take effect until the condition happens. The authorities read by the plaintiffs' counsel, are recognized as good law; but the question is repeated, could such a defense be sustained in a court of chancery, had the ground been purchased? The answer must be in the negative.

There is no want of certainty in the terms of the contract, there could be no impeachment of the consideration. No court of equity could permit the obligors to withhold the money, and the land also. And if this would be the result in a case of purchase, the donation occupies stronger ground. In selling, the vendor may have parted with all the land he owned—in making the donation his object always must be, to enhance the value of the remaining tracts. And by an enhancement of the value of these, by the establishment of the seat of justice, he has a greater compensation than by a sale of the land. If this action, therefore, were a bill filed by the person appointed by the commissioners, or their successors, the board of justices, to receive the conveyance of the lands in question, I should be inclined to decree a conveyance. But this is an action at law and it is supposed that it presents the question, whether an action at law could be maintained on the bond. This is not the view of the court. The action is not on the bond, nor is it necessary to decide the questions raised, as to the validity of this bond at common law. If the decree of the circuit court shall be sustained, the questions in regard to the bond are not open for discussion. The bond has become merged in the decree. If the circuit court had jurisdiction of the case. we can not supervise the proceeding as would be proper on a writ of error or bill of review.

It is objected to the record of the circuit court that it had jurisdiction of neither the parties, nor the subject matter of the proceeding. The circuit courts of Indiana have general jurisdiction, as well in chancery as at common law. But it is contended that this was a special proceeding not in accordance with the common law, and that the provisions of the statute must have been strictly complied with. And it is argued that the bond being void, afforded no ground of action for a court of law or chancery. The remarks already made will answer this objection. If there be enough on the face of the bond, as already suggested, to enable a court of chancery to decree a specific execution of the contract, the name in which the suit was brought might be a matter of error, but it would not render the proceeding void. The suit in the circuit court was brought against the heirs of Sargeant, and it is objected that this is too vague and indefinite, and not within the law. It seems Sargeant, the ancestor, died without a will, and it may be.

though it does not so appear in the proceeding, that the given names of the heirs were unknown to the party suing. Where such is the fact and is made known to the court by the affidavit of the complainant, the court are authorized to make such order in regard to notice as it may deem proper.

In regard to notice to the parties, in their record, the circuit court say: "And it appearing to the satisfaction of the court, that proper and legal notices have been given," etc., and this presents the question, whether such an entry upon the record can be controverted. In Dixon v. Boyer, 7 Blackf. 547, a suit was brought by notice and motion, under the act of 1838, against a sheriff for not returning an execution. There was judgment by default, damages were assessed by a jury and final judgment was entered for the plaintiff. In the judgment, the court stated, that it appeared to their satisfaction that notice of the motion had been served ten days, etc., it was held that there was no error in the proceedings. The court say, "the decisions of this court heretofore made, are to the effect, that, in a judgment by default, it must appear by the record that the defendant had notice of the suit, otherwise the judgment against him will be erroneous. 4 Blackf. 165; 5 Blackf. 332. But we do not think it material, whether the fact appear from the return to the writ, or notice set in hoc verba in the record, or whether it appear from the substance of it set out in the judgment of the court." Where a court has stated in its judgment, as in this case, that a legal notice has been served on the defendant, that fact can no more be controverted than any and every other part of the record. Where no appearance is stated in the record, or an appearance by an attorney, the defendant may not be precluded from showing that he had no notice. In the case of ——— v. ———, where suit was brought against two persons in Louisiana, one of whom resided in Missouri, and consequently no process was served upon him, but an attorney who appeared for the other party filed a general answer for both the defendants. And a decree being entered against both defendants, on which a valuable plantation was sold which belonged to the defendant in Missouri, on whom process was not served. The judgment was brought before the supreme court for revision, and the court held, on the affidavit of the counsel, that he was not authorized to appear for the absent defendants, and, by mistake, included him in the defense made, that, as to him, the judgment was a nullity. And in that opinion, the court say, if the appearance of the absent defendant had been stated on the record, by the express sanction of the court, the fact could not be controverted. In one of the New York decisions it is suggested, that the fact of the appearance being on the record does not preclude a court, when the record comes collaterally before it, from inquiring into the fact. As before remarked, if the court, under such circumstances, may controvert the fact of appearance, there is no other fact on the record which it may not controvert. If any effect is to be given to the act of congress, a record must be held conclusive between the parties, as to all matters decided by the court, when received as evidence.

The writ or notice is not a part of the record, unless made so by statute. In this case the notice was the act of the party, and not the act of the court. It had only to look at the notice and judge of its sufficiency. This the court did, and held the notice sufficient. Can the judgment of the court be shown to be erroneous, by an exhibition of the notice? If the notice had been copied into the record, however defective it might have been, yet, in the judgment of the court it was good, the proceeding therefore could only be reversible by an appellate tribunal, it would not have been void.

The proceedings in this case were special and summary, but in regard to jurisdiction, the question rests upon general principles. It would seem, that in making the order for the deed, the court exercised chancery powers, rather than the functions of a common law court. The deed has been executed under the order of the court, and the heirs have realized all the advantages contemplated by their ancestor when he made the donation, now, by reason of the alleged defects in the proceeding, seek to recover the property, which, with the improvements on it, is of immense value. It includes a considerable proportion of the city of Lafayette, a populous and growing town. There has been acquiescence of more than twenty years, and now, under the circumstances, it is too late to urge merely technical objections.

But independently of any of the grounds above stated, there would be no question, it would seem, that the act of Sargeant and others is good as a dedication to public use. This is a higher and a broader ground than has been assumed in the argument. Under the common law, such a dedication could be sustained. The legislature have regulated the mode by which this dedication shall be made, and if it should appear that some of the forms of the law had not been observed, the act would not be void. The proceedings, as far as they have been enacted by the parties, could be looked at as evidence of their intention, and this, beyond all controversy, would establish a dedication at common law. This doctrine necessarily exists in all the states. In Louisiana, where the forms of the civil law prevail, the same principle exists. It is applicable to innumerable cases of highways, streets, alleys, and public grounds, in all our cities, towns, and villages. This doctrine is almost as old as the common law, and is sanctioned by a policy essential to the welfare of a civilized country. The principle, that where a special mode is pointed out by statute, in which a thing may be done, it can be done in no other form, does not apply. Real estate can only be conveyed by a deed duly witnessed and

acknowledged; and yet the courts have holden that a right may be dedicated to the public, regarded as a fee, when the persons making the dedication had only an equitable interest. The Indiana statute does not change the character of the act. It is a dedication for public use, to be appropriated for that use, as the statute provides.

In the case of City of Cincinnati v. Lessee of White, 6 Pet. [31 U. S.] 432, the defendant set up a title by legal conveyances from John Symmes, the patentee, to himself, for the lot of ground in controversy. The city claimed the lot as part of a dedication for a common, made by the original proprietors of the town, when they had only the equitable title. The patent was not issued to Symmes until many years after the dedication, and the proprietors were never vested with the legal title. The court said: "Dedications of lands for public purposes have frequently come under the consideration of this court; and the objections which have generally been raised against their validity, have been the want of a grantee to take the title; applying to them the rule which prevails in private grants, that there must be a grantee as well as a grantor. But this is not the light in which this court has considered such dedications for public use. The law applies to them rules adapted to the nature and circumstances of the case, and to carry into execution the intention of the object of the grantor, and secure the public the benefit held out and expected to be derived from and enjoyed by the dedication." That case was an action of ejectment, brought by the claimant to recover possession of ground, which, as in the case before us, had been dedicated to the public; and the defense by the city was set up, as in this case, a dedication. This is a sufficient answer to the objection that, if it were a dedication, it could not be made a defense at law, but in equity. Upon the whole, there seems to be no legal ground on which the lessors of the plaintiffs can recover. And the jury were so instructed, if they believe the facts proved.

Verdict, not guilty.

[This judgment was affirmed by the supreme court, where it was carried by writ of error. 12 How. (53 U. S.) 371.]