# Richmond.

## MARROW AND WIFE v. BRINKLEY AND ALS.

### May 17th, 1888.

### Absent, *Richardson*, J.

1. JUDICIAL SALES—*Purchasers—Titles—Rule.*—The courts, upon public policy, establish the rule that purchasers at judicial sales, without notice, upon proceedings regular upon the face of the record of a court of competent jurisdiction, will be protected against mere errors of the court, and secret vices in the proceedings, which can only be made to appear by proof of extrinsic facts.

2. CHANCERY PRACTICE—*Estoppel—Denial of notice.*—Where, in case of a decree of a court of competent jurisdiction, the record delares that notice has been given, such declaration cannot be contradicted by extraneous proof. *Wilcher* v. *Robertson*, 78 Va. 616.

3. IDEM—*Judicial sales—Attorney's authority—Case at bar.*—Where a court, having jurisdiction of plaintiffs' ancestor's estate and person, orders sale of latter's property to satisfy his indebtedness, and the record shows that plaintiffs appeared and were made parties, and that they acquiesced in the sale and took no steps to avoid it for thirteen years, knowing that the purchasers had sold the property, such plaintiffs cannot annul the sale on the ground that they were never summoned or appeared in the cause; and where it appears that the attorney for plaintiffs' ancestor was authorized to represent him in such suit, and that plaintiffs were aware of such fact and did not, after their ancestor's death, revoke or question his authority pending said suit, such plaintiffs, after such sale has been made, are estopped from denying the said attorney's authority to represent them in said suit.

Appeal from decree of circuit court of Elizabeth City county, rendered October 26th, 1886, in a certain suit in equity wherein William P. Marrow and Mary E., his wife, and two others were

plaintiffs, and Joseph B. Brinkley and others were defendants. The court, by the said decree, having dismissed the bill of the plaintiffs, they obtained an appeal to this court. Opinion states the facts.

*Burroughs & Bro.*, and *W. W. Gordon*, for the appellants.

*Tunstall & Thom, Walke & Old*, and *Thomas Tabb*, for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

The petition of William P. Marrow and Mary E., his wife, George B. West and Missouri Smith, represents that they are aggrieved by a decree of the circuit court of Elizabeth City county, rendered on the 26th day of October, 1886, in a chancery cause in said court pending, in which they, the said petitioners, are complainants, and Joseph B. Brinkley, John L. Peek, John B. Whitehead, A. P. Thom, trustee, William H. Kimberley, Martin McDevitt, Charles F. Groome and Emma D., his wife, George W. Schermerhorn and George Booker are defendants.

At the August rules, 1870, J. B. Brinkley, a judgment creditor of Parker West, instituted his suit in the circuit court of the county of Elizabeth City to subject the lands of Parker West to the satisfaction of his judgment. At the same rules John L. Peek, another judgment creditor of Parker West, also instituted his suit in the same court to subject the lands of Parker West to the satisfaction of his judgment. At the September term, 1870, of the said court these suits were consolidated with the suit, pending in the same court, of *Willis* v. *Latimer*, because the said Latimer was also a co-judgment debtor to the said Brinkley with Parker West. On the 6th of September, 1870, a decree was entered in the said consolidated causes for an account of all the real estate of Parker West, its annual value and the liens thereon. The commissioner's report, responsive to this

order, showing a large number of judgments, aggregating many thousands of dollars, and the lands belonging to Parker West with their annual and fee simple value, and their insufficiency to satisfy the judgment liens thereon in five years, was confirmed by a decree pronounced May 4th, 1871; and, by the same decree, special commissioners were appointed to sell the real estate of Parker West; and, among other lands to be sold, "all the interest of Parker West in that certain tract of land known as Newport News, containing 300 acres," &c. The said Newport News tract of land was in the possession of J. B. Alexander, and J. J. Bowen, under a sale made by the U. S. District court of Virginia under the confiscation act of 1864.

Parker West died in December, 1871; and at the May term, 1872, of the circuit court of Elizabeth City county, its special commissioners of sale reported that they had sold, to sundry purchasers, in designated lots, 64 acres of this Newport News tract for the price of $100 per acre; and, on the 4th day of May, 1872, the court entered in the said consolidated causes the following order: viz.—"The death of Parker West being suggested, on the motion of William P. Marrow and Mary E., his wife, Elizabeth R. West, George B. West and M. Smith and Missouri, his wife (the said Mary E. Marrow, Elizabeth R. West, G. B. West, and Missouri Smith being the heirs at law of the said Parker West), to be made parties defendant to these causes, the said William P. Marrow and M. E., his wife, E. R. West, G. B. West and M. Smith and Missouri his wife, are hereby made parties defendant to these causes, with leave to file their answers. This cause then, this day, again came on to be heard, on the papers formerly read, and on the report of special commissioners C. K. Mallory, Thomas Tabb, and G. M. Peek, of the sales made by them under a former decree in these causes, to which report no exceptions have been filed, and was argued by counsel. On consideration whereof the court doth adjudge, order and decree that the said report of the sales reported therein, be and the same are hereby confirmed." At the October term, 1872, the

said special commissioners of sale reported that they had sold twenty and one-half other acres of the said Newport News tract, at $100 per acre, to John S. Tucker and John B. White-head; and, by a decree entered in the said consolidated causes October 2d, 1872, the court confirmed the said sale. All the purchase money for the foregoing recited sales of the said Newport News tract of land, at $100 per acre, was duly paid, and deeds made and delivered to the respective purchasers in obedience to the decrees of the said circuit court.

These lands brought the very high price of $100 per acre, in the expectation that Newport News would be the deep water terminus of the Chesapeake & Ohio railroad; but the value of the said lands fluctuated greatly between 1872 and 1881, as the probabilities increased or diminished that Newport News would become the terminus of the Huntington system of railroads. This being definitely determined in 1881, the appellants instituted suit to recover the lands, which are the subject of this controversy; and this was the first intimation that the defendants (the appellees here) had that the heirs of Parker West, deceased, made any claim to the lands which had been sold to pay his debts, under the decree of the circuit court of May 4th, 1872, and which had been bought and paid for by them, although the said heirs, plaintiffs (with the exception of William P. Marrow and wife, who lived in the city of Richmond), resided from 1872 to this time on a part of the very Newport News tract of land which G. B. West, one of the said heirs and plaintiffs, had purchased at the said sale under the said decree in said causes. This suit, however, was abandoned without bill being filed; and, in 1885, after the lapse of more than thirteen years from the sale and confirmation of title to these lands, bought and paid for by these *bona fide* purchasers at a judicial sale, and occupied, possessed, enjoyed, and resold to other *bona fide* purchasers, without notice, for value, the said heirs of Parker West instituted an action of ejectment against the appellees to dispossess them of the lands which they had purchased. This action, also, they aban-

doned, because the court was of opinion that under the decree of May 4th, 1872, the defendants were vested with the legal title under a decree which could not be assailed collaterally; and then they brought this suit, seeking to annul the said decree of May 4th, 1872, alleging that they were never parties to the cause under which the said lands were sold. The circuit court of Elizabeth City county, by its decree of October 26th, 1886, having maturely considered the bill, answers, exhibits, depositions and argument, dismissed the bill. We are of opinion that the bill was properly dismissed.

In 1870 suits are brought by the creditors of Parker West in the circuit court of Elizabeth City county, having jurisdiction of him and his lands in said county, to subject them to the payment of his debts; pending the said suits (consolidated) Parker West died, in December, 1871; and his heirs at law were made parties defendant to the causes May 4th, 1872, by an order of the court reciting that the death of Parker West was suggested, and that his heirs at law, the appellants here, were, by name, upon their own motion and appearance, made parties defendant, and given leave to file their answers. It appears by the very record, and the solemn recital of the decree complained of, that, at the time of the rendition of the decree, May 4th, 1872, under which the appellees purchased, and to annul which is the object of this suit, they, the appellants, were before the court; and, after they had so become parties, the sales of the lands were made, and reported to the court and confirmed by the court, without opposition or question by them, or any of them—G. B. West, one of them, and one of the appellants, actually purchasing a portion of the lands at the said sales, and some of the others living upon it. And now, after all these years of fluctuating value of these lands, sold at a very high price and applied to pay their ancestor's admitted debts, these appellants seek to set the sales aside, annul the decree of the court, and recover the property which has since become of great value.

The appellees are *bona fide* purchasers from a court of competent jurisdiction, at a judicial sale, for value, without notice of any of the matters, *extrinsic* to the record, relied on now by the appellants to support their claim; and, as such, they have the right to rely, absolutely, upon the verity of the record, as to facts extrinsic to the record, and of which they had no notice— even assuming the existence of those facts *dehors* the record. The decisions of the courts, as a system of equity, founded upon an enlightened public policy to give sanction to judicial sales, and security and repose to judicial titles, establish the rule that a purchaser at a judicial sale, without notice, under proceedings regular upon the face of the record of a court of competent jurisdiction, will be protected as against the mere errors of the court, and secret vices in the proceedings, which can only be made to appear by the proof of extrinsic facts not appearing on the face of the record. To admit a party to a suit, the record of which solemnly vouches him to be such, to recover against a purchaser at a judicial sale made under that record, by swearing that no service was actually made on him, and that there was no authorized appearance for him, as in this case, many years after the event, and after the death of the officers of the court and the distinguished and honorable counsel who had knowledge and could prove the facts vouched in the record of the proceedings, would open the door, most invitingly, to perjury, injustice and fraud; destroy all confidence in and efficiency of judicial sales, unsettle titles, and produce untold misery, mischief and confusion throughout the Commonwealth. The language of this court, by Lewis, P., in *Wilcher* v. *Robertson*, 78 Va. (3 Hansbrough) 616, is: "On the other hand, if it be a judgment or decree of a court of general jurisdiction, and the record declares that notice has been given, such declaration can not be contradicted by extraneous proof. In such cases the judgment or decree is sustained, not because a judgment rendered without notice is good, but because the law does not permit the introduction of evidence to overthrow that which, for

reasons of public policy, it treats as absolute verity. The record is, conclusively, presumed to speak the truth, and can be tried only by inspection. This results from the power of the court to pass upon every question which arises in the cause, including the facts necessary to the exercise of its jurisdiction, and as to which, therefore, its judgment, unless obtained ·by fraud or collusion, is binding, until reversed, on every other court. And especially is this so, in respect to decrees under which sales are made to *bona fide* purchasers. If it were otherwise—if purchasers could be held responsible for the errors of the court, or could be required to look beyond the proceedings in the cause to find authority for the court to act, then such sales, as has well been said, would be but snares for honest men." See, also, 1 Smith's Leading Cases, part 2, p. 1127 ; 2 Amer. Leading Cases, 803. *Reeve* v. *Kennedy*, 41 Cal. 247 ; Freeman on Judgments, secs. 509 and 416 ; *Hess* v. *Rader*, 26 Gratt. 749 ; *Dunkin* v. *Wilson*, 54 Ala. 163.

The appellees are innocent third parties not concerned in the litigation before the court, and who became purchasers by the invitation of the court; and the evidence of the appearance of the heirs of Parker West is the recital in the court's decree of the fact solemnly alleged thereby, that these heirs, the appellants, were before the court and admitted as parties defendant on their own motion.

But the evidence in the record, outside of the recital of the fact in the decree itself, is clear and abundant that these heirs knew of the pendency of the suits and all the proceedings therein, and the object thereof; that Colonel Mallory, who is dead, represented their father in these suits to sell his lands, and they did not revoke or question his authority, after the death of Parker West, pending the suits, and before the sales were decreed and made, and reported to and confirmed by the court; nor did they even take any manner of exception whatever to the act of the court in selling these lands ; and the authority of Colonel Mallory must be presumed. Judge Mon-

cure, in *Wilson* v. *Smith*, 22 Gratt. 494, says: "He (the attorney) has the right to presume his authority was continued, until revoked." And so, whether actual parties or not, they knew of the proceedings and their object, and were in duty bound to act, not only in fairness and candor, but with diligence; and having failed to do so, until by their omission and *laches* (if not, indeed, by their cunning and calculating design) the lands have passed, by regular process of law and the proceedings of a court of competent jurisdiction, into the hands of innocent purchasers, without notice, for value, whose possession it would be now inequitable and against public policy to disturb, the appellants are estopped from questioning their title. *Grymes* v. *Saunders*, 93 U. S. 61; *The Key City*, 14 Wall. 660; *Harwood* v. *R. R. Co.*, 17 Wall. 81; *Hayward* v. *N. Bank*, 96 U. S. 618; *Twin Lick Oil Co.* v. *Marbury*, 91 U. S. 592; *Wendall* v. *Van Rensalaer*, 1 Johns. 344; *Leather Manf. Bank* v. *Morgan*, 117 U. S. 108; *Morgan* v. *R. R. Co.*, 96 U. S. 716; *Neslin* v. *Wells*, 104 U. S. 438–9; *Dickinson* v. *Colgrove*, 100 U. S. 580; *Allan* v. *Hoffman*, 83 Va. 129; *Nicholas* v. *Austin*, Va. Law Journal, 1887, page 175.

The record shows that these appellants knew, all the time, all of the material facts with reference to the sale of these lands by the circuit court of Elizabeth City county, as far back as 1872, to pay their father's debts—they resided, all but one, upon a part of the very tract which was subdivided and sold to these appellees, which parcel G. B. West, one of the heirs and appellants, had bought in these suits; and the evidence is clear that Marrow, the one residing in Richmond, knew all the proceedings. They had daily evidence before their eyes of the possession by the appellees of the property which they knew had been sold to them. They resided, all of them except Marrow, within a few miles of the residence of the attorney whom they knew had been the trusted representative of their father, and who had continued after his death to represent them in the suits and sale of the lands; and they were in daily intercourse with the purchasers, whom they knew had bought, and resold these lands to others,

for value and without notice. They admit that in 1876 they knew of their supposed rights, yet, for nearly fourteen years, from the sale and purchase of these lands, under the decree of the court, in suits for the purpose to which they were parties, they remain silent and acquiescent. There were periods, during all these long years, of great doubt and hope deferred as to the final coming of the Chesapeake & Ohio railroad to Newport News, and of consequent fluctuation and heavy depression in the value of these lands, far below the price which these appellees had paid for them; and it was not till after the railroad had reached Newport News that their silence was broken, and this suit begun, by which they ask a court of conscience to deprive innocent purchasers of their vested and adjudged rights, that they may have the benefit of the ultimate enhancement in the value of these lands of their ancestor which had been sold fourteen years before, under due process of law, to pay his debts, and the proceeds applied with their knowledge, acquiescence, and actual participation, to that just and lawful consummation. Having kept a sinister silence, when they should have spoken with candor and courage, *equity* now closes her door, and leaves them to obtain from a court of *law* what they can, as a reward for their cunning and calculating caution. All the authorities say that, as against an innocent purchaser for value, without notice, a court of equity is without jurisdiction, and will refuse to give any assistance whatever; leaving the party to enforce his technical, legal rights at law; albeit any rights he may have. The decree complained of is clearly right, and is affirmed.

LEWIS, P., concurred in the result.

LACY, J., dissented.

DECREE AFFIRMED.