**GRIFFIN et al. v. CULP et al.**

No. 9477—Opinion Filed Aug. 13, 1918.

(174 Pac. 495.)

(Syllabus.)

1. **Pleading — Judgment on the Pleadings—Motion.**

A motion for judgment on the pleadings is in the nature of a demurrer, which it closely resembles, and admits for its purpose the truth of all the facts well pleaded by the opposite party.

2. **Judgment—"Direct Attack."**

A "direct attack" on a judicial proceeding is an attempt to avoid or correct it in some manner provided by law.

3. **Judgment—"Collateral Attack."**

A "collateral attack" on a judicial proceeding is an attempt to avoid defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it.

4. **Judgment — Parol Evidence — Attack on Judgment.**

When want of jurisdiction appears on the face of the proceedings of a court of general jurisdiction, whether expressly or by necessary implication, and whether as to the subject-matter or as to the parties the judgment is void, and will be so treated even in a collateral attack, but in the case of a domestic judgment of a court of general jurisdiction want of jurisdiction cannot ordinarily be shown by extrinsic evidence, in a collateral attack, but may be shown on a direct attack; but where parties by sufficient pleadings assail a judgment for want of jurisdiction because of fraud, extrinsic to the record, practiced by the prevailing party on the court or on the party against whom the judgment was rendered, parol evidence is admissible in support of such pleadings, and it is immaterial whether such an attack be denominated "direct" or "collateral."

5. **Indians—Jurisdiction of State Court.**

The district courts of this state have jurisdiction of a partition suit of a tract of land allotted to a citizen of the Five Civilized Tribes, where such land descended to the heirs free of restrictions.

6. **Pleading—Judgment on the Pleadings.**

Defendants' pleadings examined, and averments of fraud therein held sufficient to withstand plaintiffs' motion for judgment on the pleadings.

Error from District Court, McIntosh County; R. W. Higgins, Judge.

Action by A. W. Culp and others against Abe Griffin and others. Judgment for plaintiffs, and defendants bring error. Reversed, with directions.

Merwine & Newhouse and Neff & Neff, for plaintiffs in error.

B. B. Blakeney and J. H. Maxey, for defendants in error.

RAINEY, J. The plaintiffs in error, defendants below, have brought this case to this court for the purpose of reviewing an order of the district court of McIntosh county, Okla., sustaining the motion of defend-

ants in error, plaintiffs below, for judgment on the pleadings filed in said cause and from an order denying plaintiffs in error the right to amend their said pleadings. The parties will hereinafter be styled as they appeared in the trial court.

Since under the decisions of this court a motion for judgment on the pleadings is in the nature of a demurrer, and admits the truth of all facts well pleaded (C. E. Sharp Lumber Co. v. Kansas Ice Co., 42 Okla. 689, 142 Pac. 1016), it is evident that, if the pleadings alleged facts constituting a defense to the plaintiffs' action the trial court erred. After the action was instituted, a dismissal was taken as to some of the parties, and other parties were brought in, and, although the pleadings are rather elaborate, the questions involved in the appeal may be clearly understood from a brief statement of the issues attempted to be joined by the plaintiffs A. W. Culp and H. H. Galbraith and the members of the Griffin family, who will hereinafter be referred to as the Griffin heirs. As to them, plaintiffs' action was one to quiet title, and in their answers and cross-petitions they alleged that plaintiffs' title was based upon a void judgment in a partition proceeding; the invalidity of said judgment consisting in the fact that the minor defendants herein, in the action in which the judgment was rendered, were not served with summons, and it did not appear that any order was made in the case appointing a guardian ad litem for them; that the guardian ad litem, who assumed to appear for them, acted at the instance of the plaintiffs; and that Robert Griffin, one of the joint owners of the land and a party to that action, was also not served with summons and did not appear. In answer to these cross-petitions, the plaintiffs pleaded in detail the proceedings and judgment in the partition suit, and also pleaded another judgment of the district court of McIntosh county, wherein the validity of the judgment in the partition suit was called in question, and a decision rendered upholding the same and decreeing that the defendants and cross-petitioners in the present action did not have any right, title or interest in the lands in controversy. By way of reply the Griffin heirs alleged the invalidity of the second judgment pleaded by the defendants in the following language:

"That the several judgments set forth in said answers and cross-petitions were and are void, for the reason that the court had no jurisdiction to render said judgments, and had no jurisdiction over the person of these defendants; that the said decree and

proceedings had under the same could not pass title to said land, as to the interest of these defendants, to G. R. Ruby, for the reason that said land was restricted under the laws relating to minor Creek freedmen, and that the court had no jurisdiction to decree the sale thereof in said proceedings; that M. L. Leith, who attempted to appear for these defendants in the proceedings which resulted in said judgments, had no authority to represent these defendants or Robert Griffin; that said purported judgments were obtained as a result of collusion between G. R. Ruby and the plaintiffs and the persons purporting to act for these defendants, and that there was no real contest made in said proceedings, and no bona fide resistance to said judgments made on behalf of these defendants, but that said purported judgments were in fact consent judgments; that the court purporting to render said judgments was wholly without jurisdiction or authority to render any judgment quieting title of said A. W. Culp and H. H. Galbraith in said land, and was wholly without jurisdiction to render any judgment which would defeat the right of these defendants to set up the invalidity of the original judgment in cause 184 in this court."

The proceedings disclose, and it is admitted by counsel for the Griffin heirs, that the respective judgments referred to recited service of summons on complainants. One of the principal propositions of law relied upon by plaintiffs in support of the action of the trial court is that a recital in a judgment that a party was duly served cannot be contradicted by parol testimony. While the authorities are not all in accord on this question, we are satisfied that the weight of authority and the better and safer rule is that where the want of jurisdiction appears on the face of the proceedings, whether expressly or by necessary implication, and whether as to the subject-matter or as to the parties, that the judgment is void, and will be so treated, even in a collateral attack; but where no such defect appears on the face of the proceedings in the case of a domestic judgment of a court of general jurisdiction, want of jurisdiction cannot be shown by extrinsic evidence in a collateral attack, but may be shown on a direct attack.

In Jones' Commentaries on Evidence, vol. 33, § 611, p. 877, the grounds upon which this salutary rule is based are stated as follows:

"Very great consideration has been given by eminent jurists to the conflict between principles of policy, which require the judgment to be preserved from collateral attack, and the principles of natural justice, which call for it being disregarded whenever brought in question upon allegation and proof that the party, for instance, had

no notice or opportunity of being heard. The principles on which the rule rests are clearly and ably stated by Gholson, J., in a well-known Ohio case. The learned judge said: 'As to the judgments of courts of general jurisdiction, the decisions in this state, though perhaps not entirely uniform or consistent, do undoubtedly show a strong inclination to sustain such judgments against indirect or collateral attacks on their validity and effect. It appears to have been thought that natural justice is satisfied when notice is required and an impartial tribunal established to ascertain and determine whether it has been given. Nor can it properly be said that such a tribunal has jurisdiction because it has so decided. Its decision is binding because it was authorized to make it, and because public policy, and the respect due to the sovereignty it represents, at least in tribunals acting under the same sovereignty, require that the decision should be regarded, while it remains on the record unimpeached and unreversed.' In a Connecticut case of equal renown, the court, dealing with the occasional hardships which the adoption of the rule may entail and answering a suggestion of the possibility of an officer of the court fabricating a record, said: 'It will not be denied, and has not been on the argument, that when a court has jurisdiction its record speaks absolute verity, because it is the record of the court's doings; and being a court of final jurisdiction, there must be an end to the matter in dispute, if it be possible to reach that end at all. And it is so necessary that confidence should be reposed in courts of a high character, as well as in the records of such courts, that on the whole, and in view of all the considerations affecting the subject, it is the only safe rule to give the decisions of courts of general jurisdiction full effect so long as they remain in force, rather than to leave them open to be attacked in every way and on all occasions. Being domestic judgments, they can, if erroneous, be reviewed by proceedings instituted directly for the purpose, and reversed on error, or by a new trial; and if the danger is imminent and special, relief can be temporarily, if not finally, obtained by application to a court of equity. Any other rule with regard to judgments of such courts would be attended in its application with very great embarrassment, and would be very dangerous in its general operation. The general good clearly requires, and has therefore established the rule that domestic judgments of courts of general jurisdiction cannot be attacked collaterally.' The fact of jurisdiction appearing on the record, it cannot be controverted."

The defendants, in their cross-petitions, have attacked the recitals as to service in the judgments relied upon by the plaintiffs, and it therefore becomes necessary for us to determine whether the attack sought to be made is direct or collateral. These two modes of attack are correctly defined in the first and second paragraphs of the syllabus in the case of Continental Gin Co. v. De Bord, 34 Okla. 66, 123 Pac. 159, as follows:

"A 'direct attack' on a judicial proceeding is an attempt to avoid or correct it in some manner provided by law.

"A 'collateral attack' on a judicial proceeding is an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it."

Commissioner Ames, who wrote the opinion in the above case, also wrote the opinion in the case of Ray v. Harrison, 32 Okla. 17, 121 Pac. 633, Ann. Cas. 1914A, 413, wherein it was held that although a false return of personal service on which a judgment was rendered was prima facie evidence of its truthfulness and would require clear and convincing proof to set it aside, that such return was not conclusive and could be impeached by parol testimony. The rule thus stated is correct as applied to a direct attack, as we have already seen, but upon examination of the briefs filed in the case then under consideration by the Commissioner we find that the question as to whether the attack in the case was direct or collateral was not presented, nor was that question considered by the learned Commissioner who wrote the opinion. That he had in mind the rule applicable to direct attacks is evident from the rule later announced in the opinion prepared by him in the De Bord Case, supra, from which we quote as follows:

"The court likewise permitted evidence to be offered attacking the jurisdiction of the court over the person of the defendant in the foreclosure proceedings. In the decree of foreclosure, it is recited that the defendant appeared in person and by his attorney. The court admitted evidence tending to show that the defendant was not present, that at some time before the trial he sustained an injury which resulted in weakening of the brain, and that at the time the judgment was rendered he was non compos mentis. We think this was error, as the express finding of the court that the defendant was present at the time the judgment was rendered, both in person and by attorney, cannot be attacked in a collateral proceeding any more than any other express finding. The law provides methods of direct attack which furnish ample protection in such cases. In the trial of any lawsuit, it is necessary for the court to acquire jurisdiction over the person of the defendant; and when the court has solemnly passed upon this question of jurisdiction, and expressly found that the defendant was present, that finding is as conclusive in a collateral proceeding as the

judgment of the court on any other question at issue in that case. Van Fleet on Collateral Attack, par. 468, citing Eitel v. Foote, 39 Cal. 439; Harnish v. Bramer, 71 Cal. 155, 11 Pac. 888; dictum in Bridgeport Savings Bank v. Eldredge, 28 Conn. 556, 562, 73 Am. Dec. 688; Osgood v. Blackmore, 59 Ill. 261, 265; Rumfelt v. O'Brien, 57 Mo. 569, 572; Lingo v. Burford (Mo.) 18 S. W. 1081; Harris v. McClanahan. 79 Tenn. 181, 185; Letney v. Marshall, 79 Tex. 513, 15 S. W. 586; Marrow v. Brinkley, 85 Va. 55, 6 S. E. 605, 608; Doe ex dem. Sargeant v. State Bank, 4 McLean, 339, 346, Fed. Cas. No. 12,360; Colt v. Colt (C. C.) 48 Fed. 385."

See Hathaway v. Hoffman, 53 Okla. 72, 153 Pac. 184.

It is regrettable that there is considerable loose language and some apparent conflicts in our own decisions on this question that are very confusing to the bar and make it very difficult for the trial courts in some cases to apply the correct rule. In Brown v. Trent, 36 Okla. 239, 128 Pac. 895, it is held that an attack upon a judgment for fraud in its procurement is a direct attack over which courts of equity take jurisdiction, and in the case of Sockey v. Winstock, 43 Okla. 758, 144 Pac. 372, it is held that:

"Where the judgment is void by reason of fraud practiced in obtaining it, and for like reasons a collateral attack may be made upon the judgment by a proceeding in equity, notwithstanding the court had jurisdiction of the proceedings resulting in the judgment attacked. By some of the authorities, it is held that this is a direct attack, but the weight of authority, supported by better reason, seems to be that it is a collateral attack, but by reason of fraud, a collateral assault upon the judgment is permissible."

The distinction in the two divergent theories is in name only. In any case if the matters alleged in the pleadings are permissible under the provisions of the Code hereinafter mentioned and a party to the action assails, by such pleadings, a judgment for want of jurisdiction because of fraud extraneous to the issues practiced upon the court or on the party against whom the judgment was rendered that prevented him from having a fair opportunity to present his case the same evidence is admissible in support of such pleadings whether the attack is denominated direct or collateral. The kinds of fraud which will vitiate a judgment in an independent action are pointed out in United States v. Throckmorton, 98 U. S. 61, L. Ed. 93, which is quoted from with approval in Brown v. Trent, supra.

It was also pointed out in Brown v. Trent that the action may be one in which a di-

rect attack is authorized by law, and yet, on account of the issues as presented by the pleadings, a direct attack would not be permissible. Commissioner Rosser, who prepared the opinion for this court, illustrated the point as follows:

"For instance, if the parties in this action were reversed and the purchaser at the guardian's sale had brought suit for the possession, relying upon the title bought as shown by the record, the ward, **without alleging the invalidity of the judgment** and praying for its cancellation, had objected to its introduction in evidence and offered to prove in support of the objections that the orders were procured by fraud, that would be collateral attack. An issue collateral to the pleadings would have been tendered. Even in that sort of an action, if the defendant by cross-petition had set up the fact that the judgment on which plaintiff relied was procured by fraud, and had prayed to have it canceled, it would have been a direct attack, and evidence would have been admitted to sustain the cross-petition." (Emphasis ours.)

In the instant action the averments of facts by which defendants and cross-petitioners seek to avoid and vacate the judgment in controversy are found in their cross-petitions and in their replies to the answers filed by the plaintiffs to said cross-petitions. This, however, does not militate against the pleadings. Under our Code (section 4745, Rev. Laws of Oklahoma 1910) the defendant is authorized to allege in his answer:

First. A general or specific denial of each material allegation of the petition controverted by the defendant.

"Second. A statement of any new matter constituting a defense, counterclaim or setoff, or a right to relief concerning the subject of the action, in ordinary and concise language, and without repetition.

"Third. When relief is sought, the nature of the relief to which the defendant supposes himself entitled. The defendant may set forth, in his answer, as many grounds of defense, counterclaim, set-off, and for relief, as he may have, whether they be such as have been heretofore denominated legal, or equitable, or both."

It is obvious, then, that the defendants were strictly within their statutory rights in pleading in their answers and cross-petitions facts which they believed entitled them to equitable relief. When plaintiffs, in their answer to the cross-petitions, alleged new matter as they did, the defendants and cross-petitioners were authorized, under section 4745, Rev. Laws of 1910, in their replies to allege any new matter not inconsistent with their cross-petitions that constituted a defense to such new matter in

the answer. This they attempted to do. The question which naturally follows is: Did the matters alleged constitute a defense to the plaintiffs' action and were they such as entitled the defendants and cross-petitioners to equitable relief? The mere allegations in their pleadings that no summons had been served on the defendants, standing alone, would not entitle the defendants to relief in equity (Continental Gin Co. v. De Bord, supra), but coupled with the averments of fraud and collusion extraneous to the issues in the cases in which the judgments were rendered, we think the pleadings were sufficient as against the motion for judgment thereon. No motion to make these pleadings more definite and certain was filed, but this is what defendants and cross-petitioners attempted to do when they asked the court to permit them to amend their pleadings by making the following additional allegations:

"For further reply said defendants and cross-petitioners state that the recitals in the said judgment in case No. 184, to the effect that the defendants in said action had been duly served with summons was procured by fraud of said G. R. Ruby in that he caused a false return of service of summons upon the defendants in said cause to be made and caused the same to be signed by the deputy sheriff purporting to have made the service and caused the same to be attached to the original summons in said action and thereby caused the court to find that legal service had been made and that the finding of legal service in the subsequent judgment was based solely upon said recital in case 184 in this court."

The fraudulent acts alleged in the amendment offered, if true, would bring the case squarely within the rule announced in United States v. Throckmorton, supra. We are therefore of the opinion that the trial court should have permitted the amendment.

The defendants also contend under the authority of Coleman v. Battiest, 6 Okla. 71, 162 Pac. 786, that the district court of McIntosh county did not have jurisdiction of a proceeding to partition the lands involved in this action. In the case cited the district court of Atoka county was asked to partition inherited lands between restricted Indian heirs, and it was held that it could not be done, for the reason that said lands could only be alienated in the manner provided by Congress. It is obvious that that case has no application here, for the reason that the land in this case descended to the heirs free of restrictions, and we are aware of no statute or decision which would preclude the district courts of the state from exercising jurisdiction in such cases.

For the reasons above set forth, this cause is reversed and remanded, with directions to the trial court to permit defendants and cross-petitioners to amend their pleadings and to overrule the motion for judgment on the pleadings and to take such other proceedings as are not inconsistent with the views herein expressed.

All the Justices concur, except MILEY, J., not participating.