2007 OK 57

**Franklin HOUSE, for himself and all others similarly situated, Plaintiff/Appellee,**

v.

**The TOWN OF DICKSON, a Municipal Corporation, Defendant/Appellant.**

**No. 102,721.**

Supreme Court of Oklahoma.

July 3, 2007.

David Pyle, Dennis R. Morris, David O. Blankship, Ardmore, OK, plaintiff/appellee.

S. Brent Bahner, Julie J. Austin, Fischl, Culp, McMillin, Chaffin, Bahner & Long, Ardmore, OK, for defendant/appellant.

TAYLOR, J.

¶ 1 The questions before this Court are whether the district court's order of partial summary adjudication is appealable and whether the district court erred in ordering that the action be maintained as a class action pursuant to title 12, section 2023 of the Oklahoma Statutes. We answer the first

question in the negative, and the second question in the affirmative.

## I. Undisputed Facts and Allegations

¶ 2 Because the record before this court is abysmally deficient, the undisputed facts are few. The record on appeal shows the following undisputed facts. On January 20th, 2005, Franklin House (House), the plaintiff in this case, received a citation for reckless driving in violation of a Town of Dickson (Dickson) penal ordinance. On February 19, 2005, he paid a fine of $389.00 for the violation. At the time, the latest Dickson ordinances deposited in the county law library were dated 1992, and no resolutions for the Dickson governing body were on file at the Carter County Clerk's office.

¶ 3 House made the following allegations and arguments before the trial court in this case. The fine was excessive because Dickson had not filed any ordinances in the Carter County Law Library since November 1, 1992, and had not filed any resolutions with the county clerk. Under title 11, section 14–111(E),[1] a municipality cannot levy a fine of more than $50.00 until it has compiled and

published its penal ordinances as required by sections 14–109[2] and 14–110.[3] Section 14–109 requires a municipality to compile and publish its ordinances at least once every ten years and publish biennial supplements. Under section 14–110, upon a municipality compiling the permanent volume of its ordinances and biennial supplement, its governing body must adopt a resolution so notifying the public, must file it in the county clerk's office, and must deposit a copy in the county law library. Dickson did not comply with sections 14–109 and 14–110 by filing a copy of a resolution notifying the public of the publication of its penal ordinances and by depositing a copy of the compilation in the county law library. Thus, Dickson was statutorily prohibited by title 11, section 14–111(E) from levying a fine of more than $50.00.

¶ 4 House sought class certification for all persons who had paid fines to Dickson in excess of $50.00 since November 1, 2002. In his petition filed in the district court, House requested that Dickson be enjoined from collecting fines of more than $50.00 from "any member of the Plaintiff's class," sought judg-

---

1. Title 11, section 14–111(E) of the Oklahoma Statutes provides:

   No municipality may levy a fine or deferral fee in lieu of a fine of over Fifty Dollars ($50.00) until it has compiled and published its penal ordinances as required in Sections 14–109 and 14–110 of this title.

2. 11 O.S.2001, § 14–109 provides:

   The penal ordinances of every municipality shall be compiled and published in a permanent form, either printed or typed, periodically, but not less than once each ten (10) years. Each municipality shall also publish biennial supplements to the permanent volume of compiled penal ordinances. No municipal ordinance shall be enforced if it is not reflected in such a permanent volume or supplement if the ordinance was adopted before the latest compilation or supplement. A codification of municipal ordinances which includes all penal ordinances is sufficient for complying with this compilation requirement if the code is issued as a permanent volume with biennial supplements and if the procedures for filing and notice, as outlined in Section 14–110 of this title, have been complied with. Provided, further, the ten-year codification requirement shall be satisfied if the code complies with the compilation requirement and the biennial supplements are made a part of the permanent volume which are maintained in permanent form either bound or in a loose-leaf form.

3. Title 11, section 14–110 of the Oklahoma Statutes provides:

   When a municipality has compiled and published its permanent volume or biennial supplement of penal ordinances, the governing body of the municipality shall adopt a resolution notifying the public of the publication. A copy of the resolution shall be filed in the office of the county clerk in each county in which the municipality is located. The county clerk shall assign the filed resolution a book and page number. At least one copy of the permanent volume and each biennial supplement shall be deposited free of cost by the municipality in the county law library of each county wherein the municipality is located, and receipt of same shall be duly noted in writing by the county law librarian. A copy of the receipt may be filed with the county clerk who shall then assign a book and page number. The permanent volume or biennial supplement of compiled penal ordinances shall be available for purchase by the public at a reasonable price. Ordinances which have been compiled and filed in accordance with this section shall be judicially noticed in all court proceedings. Provided, a court may consider a book and page reference of the county clerk's filings as satisfactory proof of compliance so that judicial notice may be taken of an ordinance.

ment in his favor of $339.00 together with interest and costs, and judgment in favor of members of "the Plaintiff's class" in an amount of fines paid in excess of $50.00 with interest and costs.

¶5 Dickson filed an objection to House's motion for summary judgment and a counter-motion for summary judgment which it supported with evidentiary materials. Dickson's allegations follow. Dickson contracted with a company to codify all ordinances from 1991 to 2001 and to codify all new ordinances by June 30th of every year thereafter. On October 15, 2002, Dickson's Board of Trustees passed a resolution (1) notifying the public of the publication of the 2002 Supplement to the Code of Ordinances and making copies available for review in its clerk-treasurer's office, (2) directing its clerk-treasurer to file a copy of the resolution in the Carter County Clerk's office, (3) directing its clerk-treasurer to file a copy of the resolution and a copy of the supplement to the code with the Carter County Law Library, and (4) directing its clerk-treasurer to retain a copy in the office for public use, inspection, and examination. The Dickson clerk asked the Dickson Chief of Police to deliver a copy of the Dickson Code of Ordinances to the Carter County Law Librarian. When the police chief arrived at the Carter County Law Library, he could not get into the library, he asked a district attorney's employee for assistance, and the library was empty once he gained access. The police chief left a copy of Dickson's Code of Ordinances with a county employee who said she would deliver it to the county law librarian. Dickson in its counter-motion for summary judgment asserts that even if it had not fully complied with the statutory requirements, it was in substantial compliance.

## II. Procedural History

¶6 On June 27, 2005, the district court sustained House's motion for summary judgment in part finding House had received and paid a traffic fine in excess of $50.00 and Dickson had not published its ordinances as required by the Oklahoma statutes. The district court limited the extent to which it sustained House's motion to these two find-

ing.[4] It did not assess any damages. Then on October 14, 2005, the district court entered an order certifying the class and dismissing House's claim for injunctive relief. Dickson appealed raising the issues of whether the trial court erred in granting House's motion for summary judgment and in certifying the class action. House did not appeal the dismissal of his claim for injunctive relief. The Court of Civil Appeals affirmed the district court, and this Court granted certiorari.

## III. Appellate Review of District Court Orders

¶7 Title 12, section 993 provides that an appeal from an order certifying or refusing to certify an action to be maintained as a class action may be appealed without a final determination in the cause being entered. Thus, the district court's order certifying this action to be maintained as a class action is properly before this Court.

¶8 The order ruling on the House's motion for summary judgment states:

Accordingly, the Court finds the following as a matter of law: (1) Mr. House received and paid a traffic fine in excess of $50.00; (2) At the time the plaintiff received and paid the ticket, Dickson had not published its ordinances as required by Oklahoma statutes. The plaintiff's Motion for Summary judgment is therefore sustained to that limited extent.

This order leaves the issues of entitlement to and the amount of damages unresolved and questions of fact unanswered. The order also leaves Dickson's counter-motion for summary judgment pending. Thus, it is a partial summary adjudication or, in lawyer's parlance, a partial summary judgment. *Reams v. Tulsa Cable Television, Inc.*, 1979 OK 171, ¶3, 604 P.2d 373, 374.

¶9 A partial summary adjudication is not a judgment under title 12, section 681 of the Oklahoma Statutes nor is it a final order under title 12, section 953. *Reams*, 1979 OK 171 at ¶3, 604 P.2d at 374. A partial summary adjudication is not appealable unless it is an interlocutory order (1) appealable by right under title 12, sections 952(b)(2) or 993 or other statutory provision

---

4. This order was previously appealed and given an appellate number of 102,336. This Court

dismissed the appeal for lack of an appealable order.

or (2) certified for immediate appeal under title 12, section 952(b)(3), or (3) it is prepared as a final judgment, order, or decree at the direction of the court with a finding that there is no just reason for delay and disposes of some of the claims pursuant to title 12, section 994. *Id.* The district court's partial summary adjudication before us is not appealable by right nor does it contain the necessary language for review as required by title 12, sections 952(b)(3) or 994.

¶ 10 Even if the district court's partial summary adjudication had disposed of all the issues, it would have been improperly rendered as material facts remained in dispute. Summary judgment is proper only when "there is no substantial controversy as to any material fact. . . ." 12 O.S.2001, ch. 2, app., rule 13(e). In this case, material facts necessary to support a summary judgment are not part of the record.

¶ 11 There remain factual questions which would show whether or not House's claims are an impermissible collateral attack on a judgment of the Dickson municipal court.[5] A judgment or final order of a court is not subject to collateral attack unless the judgment is void. *Stork v. Stork*, 1995 OK 61, ¶ 12, 898 P.2d 732, 738. A judgment will be deemed void only when the face of the record reveals that one of three jurisdictional elements is missing: jurisdiction over the parties, jurisdiction over the subject matter, or power to pronounce the particular decision that was entered. *Id.* at n. 17. If extrinsic evidence is necessary to show the jurisdictional defect, the judgment or final order is not void. *Id.* ¶ 12, 898 P.2d at 738. Further,

the legal existence of a de facto court acting under color of law is not subject to collateral attack. *Morgan v. State*, 66 OK CR 205, 90 P.2d 683 (1939); *Cullins v. Overton*, 1898 OK 43, ¶ 14, 54 P. 702, 706 (Indian Terr.). Whether the Dickson municipal court entered a final order or judgment regarding House's conviction and sentence is a material question of unanswered fact on which the resolution of the present case depends and prevents summary judgment.

## IV. Class Certification

¶ 12 An order determining that an action should be maintained as a class action under title 12, section 2023 is reviewed for abuse of discretion. *KMC Leasing, Inc. v. Rockwell–Standard Corp.*, 2000 OK 51, ¶ 8, 9 P.3d 683, 687. An abuse of discretion occurs in the certification of a class action when one or more of the statutory prerequisites for maintaining the action as a class action is absent. *Id.*

¶ 13 The party seeking class certification has the burden of establishing each of the four statutory prerequisites for maintaining a class action contained in title 12, section 2023(A).[6] Additionally, the party seeking class certification must prove one of the requirements set out in section 2023(B).[7] *KMC Leasing, Inc.*, 2000 OK 51 at ¶ 8, 9 P.3d at 688. The district court found that the prerequisites of title 12, section 2023(A) had been met and that the questions of law or fact common to the members of the class predominated over any questions affecting only individual members and a class action was superior to other available methods for

---

**5.** A collateral attack is an attempt to avoid the force and effect of a judicial proceeding in an incidental proceeding not provided by law for the express purpose of attacking the judicial proceeding. *Griffin v. Culp*, 1918 OK 474, 68 Okla. 310, 174 P. 495, Syllabus by the Court. "A 'direct attack' on a judicial proceeding is an attempt to avoid or correct it in some manner provided by law." *Id.*

**6.** Title 12, section 2023(A) provides:
   A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:
   1. The class is so numerous that joinder of all members is impracticable;
   2. There are questions of law or fact common to the class;

   3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
   4. The representative parties will fairly and adequately protect the interests of the class.

**7.** Title 12, section 2023(B) provides:

   B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A of this section are satisfied and in addition:
   1. The prosecution of separate actions by or against individual members of the class would create a risk of:
   a. inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

the fair and efficient adjudication of the controversy pursuant to section 2023(B).

¶ 14 The record does not support the district court's finding that House will fairly and adequately protect the interest of the potential class members, a prerequisite under subsection A. Likewise, it does not support a finding that the questions of law or fact common to the members of the potential class predominate over questions of individual members under subsection B. These two findings of the district court are inextricably intertwined.

¶ 15 The outcome of each of the potential class members' claim for damages will rest on the particular circumstances and proceedings regarding the payment of the fines by each potential class member. As discussed above, collateral estoppel may apply to bar some of the potential class members' claims for damages. However, it may not bar others if no order or judgment was entered by the Dickson Municipal Court. Also the doctrine of waiver and estoppel may be an affirmative defense available to Dickson against some of the claims.

■■■ ¶ 16 In the answer to House's petition, Dickson did not assert the affirmative defense of waiver and estoppel. While Dickson may have not asserted this affirmative defense against House's claims for damages, it may be available against the other potential class members depending on the facts surrounding the payment of the individual fines. Our law provides: "A person may waive a right by conduct or acts which indicate an intention to relinquish it, or by such failure to insist upon it that the party is estopped to afterwards set it up against his adversary." *A.R. Steiger v. Commerce Acceptance of Okla. City, Inc.,* 1969 OK 78,

¶ 38, 455 P.2d 81, 89 (quoting *Scott v. Signal Oil Co.,* 1912 OK 816, 35 Okla. 172, 128 P. 694, Syllabus by the Court, No. 1). The district court abused its discretion in ordering the action be maintained as a class action because the statutory prerequisites for maintaining a class action are absent from this record.

■■■ ¶ 17 In a civil action challenging a fine, the questions of law and fact generally will be fact specific to the circumstances and proceedings which resulted in the payment of the fine, whether voluntary or involuntary, whether upon a plea of guilty or nolo contendere, whether upon a finding of guilty by the court accompanied by an order or judgment, whether an appeal was taken from a court order, or whether other circumstances or court actions occurred. Because the questions affecting only individual members will predominate over common questions, there most likely will not be a representative party who will fairly and adequately protect the interests of the potential class members in such a civil action, and certification of a class will seldom, if ever, be proper.

## V. Conclusion

¶ 18 The interlocutory order that the action in this case should be maintained as a class action is appealable under title 12, section 993. The partial summary adjudication left unresolved the issues of entitlement to and the amount of damages. Thus, it was neither a judgment nor a final order and did not fall within any of the other statutory provisions which would allow our review. The district court erred in ordering that the action be maintained as a class action.

¶ 19 According, the Court of Civil Appeals' opinion is vacated. The district court's order

---

b. adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

2. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superi-

or to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
   a. the interest of members of the class in individually controlling the prosecution or defense of separate actions,
   b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,
   c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and
   d. the difficulties likely to be encountered in the management of a class action.

that the action should be maintained as a class action is reversed. The cause is remanded for further proceedings consistent with this opinion.

COURT OF CIVIL APPEAL'S OPINION VACATED; DISTRICT COURT'S CLASS CERTIFICATION ORDER REVERSED; CAUSE REMANDED.

WINCHESTER, C.J., LAVENDER, HARGRAVE, OPALA, TAYLOR, JJ., concur.

EDMONDSON, V.C.J., KAUGER, WATT, JJ., concur in result.

COLBERT, J., concurs in part; dissents in part.